FORMILLER *v.* DETROIT UNITED RAILWAY.

1. STREET RAILWAYS—OPERATION OF CARS—NEGLIGENCE—BOARDING CARS—VARIANCE.

It was not a fatal variance under a declaration charging that after plaintiff stepped on the lower step of the car the defendant's servants suddenly started the car forward and threw him off, to show by the testimony that the car had started in the usual way, and, as he was stepping on the second step, it suddenly increased the speed and threw him to the ground.[1]

[1] Starting street car before passenger is seated, see notes in 42 L. R. A. 294, and 4 L. R. A. (N. S.) 558.

Negligence in starting street car with jerk, see note in 23 L. R. A. (N. S.) 891.

2. SAME.

A request defining the act of boarding a car was unnecessary, and was also properly refused as incorrect.


2. SAME.

Whether plaintiff's injury resulted from the sudden acceleration of the car or from the starting of it, was for the jury, under evidence which might support conflicting inferences.

3. SAME—TRIAL—REQUESTS.

A request defining the act of boarding a car was unnecessary, and was also properly refused as incorrect.

4. SAME—DUTY TO PASSENGERS—CARRIERS.

The court did not err in charging the jury that plaintiff was entitled to an opportunity to come to a place of safety on the car, before it was started.

5. EVIDENCE—IMPEACHMENT—INTOXICATION.

In an action for injuries sustained in boarding a street car, statements of plaintiff's companions, made in his presence to his physician, stating incorrectly the facts as to their boarding and alighting from the car, not offered to impeach the witnesses or as substantive evidence, but as tending to show they were intoxicated, were properly excluded by the court on the objection of plaintiff's attorney that proper ground for impeachment had not been laid.

6. TRIAL —ARGUMENT — SAVING QUESTIONS FOR REVIEW—APPEAL AND ERROR.

Objectionable argument of plaintiff's counsel, not ruled upon by the trial court, and claimed to be in answer to argument of defendant's attorney, did not constitute reversible error.

Error to Wayne; Murphy, J. Submitted January 9, 1911. (Docket No. 57.) Decided March 13, 1911.

Case by Frank Formiller against the Detroit United Railway for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Corliss, Leete & Joslyn* ( *W. G. Fitzpatrick*, of counsel), for appellant.

*Dohany & Dohany*, for appellee.

McALVAY, J. Plaintiff brought suit against defendant for damages resulting from injuries received, caused by the claimed negligent handling of a car on defendant's street railway, in the city of Detroit. The claim of plaintiff

is that the accident occurred while the car was standing still and he was boarding the same. The negligence charged and relied upon in his declaration is that:

"After plaintiff had stepped upon the lower step of said car, and while he had hold of the brace of said car with his left hand, the defendant's servants, agents, and employés, in charge of said car, carelessly, negligently, and wrongfully started said car suddenly forward, by means of a quick application of electricity, without giving plaintiff any warning that said car was to be started as aforesaid, and without giving plaintiff an opportunity to get safely aboard said car, thereby jerking plaintiff so suddenly and severely that he was thrown heavily forward," etc.

The plaintiff sets forth that defendant owed a duty—

" To give plaintiff, in boarding said car while the same was standing still, reasonable time and opportunity to do so before starting said car, and to give plaintiff an opportunity to step up from the step to the rear platform of said car before starting the same, and to refrain from starting said car while plaintiff was going to board it; * * * that defendant negligently * * * failed to give plaintiff a reasonable time and opportunity * * * to step from the step of said car up onto the rear platform before starting said car, and did not refrain from starting the said car while plaintiff was getting aboard it."

The accident occurred October 20, 1908. Plaintiff and three companions were standing on the west side of Belvidere avenue on Kercheval, waiting for a car. The car came to a stop. Three of the party got on the car, and then plaintiff proceeded to get on. There is a dispute as to exactly what occurred. His testimony is that he put his left foot on the step of the car, took hold of the stanchion with his hand, and reached for the second step with his right foot, when the car started, causing him to lose his balance, and the car started " worse " throwing him to the pavement. On cross-examination he leaves it doubtful whether or not he got his right foot on the second step, as he testifies both ways. He explains what "the car started worse" means by saying that it first started easily

as usual, and soon after started suddenly faster. He testifies that this sudden jerk threw him down.

The theory of the defense was that plaintiff had succeeded in boarding the car in safety, and fell from the rear platform either as a result of losing his balance while engaged in a friendly scuffle with his companions, or by reason of a sudden and unexplained movement of the car after it was put in motion. One of the bones (fibula) of plaintiff's left leg was fractured near the ankle. A trial resulted in a verdict and judgment for plaintiff. On account of errors which occurred upon the trial, defendant, upon a review by this court, asks for a reversal of such judgment. No motion for a new trial was made. Attention will be given to those errors defendant in its brief discusses and relies upon as constituting reversible error.

1. It is contended that there was a fatal variance between the allegations of the declaration and plaintiff's proofs, and the court either should have granted an amendment on terms, or, the plaintiff not wishing to amend, should have directed a verdict for defendant. The averments of the declaration are given above and are to the effect that, while plaintiff was in the act of boarding the car standing still, it was suddenly started forward by means of a quick application of electricity. The testimony of the plaintiff shows that the initial starting was as a car usually starts, and not suddenly, and that the jerk occurred while he was in the act of placing his foot on the second step. The court gave plaintiff the privilege to amend, which was not accepted, and a motion to direct a verdict for defendant on account of a fatal variance between pleadings and proofs was denied. Whether or not this was error must be determined from the circumstances of the instant case. The charge of negligence is that, while in the act of boarding the car, it started forward suddenly by means of a quick application of electricity. The evidence on the part of plaintiff shows that this jerk occurred very soon after the car began to move and before, or just as, plaintiff's foot was on the second step.

Although this sudden jerk was not the initial movement of the car, we think that in this case proof of it is allowable under the pleading, and that it cannot be said to be another and different act of negligence from that charged; *i. e.*, that the car was started suddenly forward while plaintiff was in the act of boarding it. The court was not in error in refusing to direct a verdict for defendant.

2. The second question involved, as stated in appellant's brief, is:

"Did it appear from the evidence that plaintiff's injury resulted from a fall caused by a sudden acceleration in the speed of the car after he had boarded the same; the initial act of starting being usual and proper and without negligence?"

We consider this a question of fact and not of law. This question indicates the theory upon which defendant tried the case. The court has not undertaken, in what it has just said upon the question of variance, to weigh the evidence, but to hold that the proofs of plaintiff were admissible under the pleading, leaving it for the jury under proper instructions to find the fact.

3. Appellant contends that the court in this case should have defined what constitutes the act of boarding a car, as requested in writing, or its equivalent. It will be unnecessary to print the request, which was refused. It was not a proper definition to give to a jury. Nor was such a definition necessary in this case under the facts. The court correctly charged:

"The right of the plaintiff to recover in this case is planted solely upon the claim that, while he was in the act of boarding the car, and before he had been given an opportunity to complete that act, he was, through the negligent starting forward of the car, precipitated to the pavement. * * *

"If it be your view from the evidence that the plaintiff had succeeded in his effort to board the car, and, having so done, stood engaged in conversation, and thereafter was precipitated to the pavement, in that event you may not award the plaintiff a verdict, because the declaration

filed in this case, which is the statement of the plaintiff's claim, would not warrant you in returning any verdict upon any such theory as that."

This last paragraph quoted was given because this was defendant's theory, in support of which evidence was produced. The two paragraphs of the charge quoted placed the issue squarely before the jury, and any other charge upon that matter was unnecessary.

4. It is urged that the court did not correctly instruct the jury with reference to the scope and extent of the duty owing to plaintiff under his declaration. These portions of the charge objected to are italicized and quoted by defendant as follows:

"Your first inquiry here, * * * gentlemen of the jury, should be: What actually happened after the plaintiff attempted to or did succeed in *boarding* this car? It seems to be conceded that the car was brought to a full stop. Thereupon it was the duty of the defendant * * * to give the plaintiff a reasonable opportunity to board it, *and to come to a position of safety upon the car.* If they did that, then the defendant did its full duty and is not liable."

Again:

"The defendant must give the passenger a reasonable opportunity to board the car *and to come to a position of safety upon it after he had boarded it;* and whether or not its conduct in a given case affords such reasonable opportunity is a question of fact for the jury."

Again:

"So here, gentlemen of the jury, it is for you to say: Did this defendant give to this plaintiff, *first,* a reasonable opportunity to board the car in safety, and did it give him a reasonable opportunity to come to a position (of safety) upon the car? If it failed *in either of these respects,* then, if he himself were without negligence, it would be answerable for any injury that its failure caused him."

Again:

"I think I said to you, also, a moment ago, that it is not

necessarily negligence, as a matter of law, to start a street car when a person intending to become a passenger thereon is attempting to board it. Just what a company may do in starting a car is a question of fact for the jury also, and applying this test to the defendant's employé, namely, was the plaintiff given a reasonable opportunity to safely board the car and come to a safe position upon it? Applying that test, you can say whether or not such a reasonable opportunity was given."

Again:

"It is not necessarily true that a street car company must keep its car still in waiting until a passenger shall have succeeded in getting aboard the car. * * * There may be conditions under which it may not be necessary to do that, and, whether or not there are conditions which justify the company in moving its car ahead *before a passenger shall have entered a car*, that is a question for the jury to say, bearing in mind that the company must give a passenger a reasonable opportunity to board the car *and come to a reasonable position of safety upon it*. Do I make myself clear upon that, gentlemen of the jury?"

It is insisted that the reiteration by the court that a passenger must be afforded a reasonable opportunity *to come to a place of safety on the car* after boarding the same, while sound as a statement of law, in the abstract, had no place in this case, where the sole negligence charged is a failure to afford a reasonable opportunity *to board the car*, and necessarily gave the jury to understand that it would be proper to base a verdict upon a finding of failure to observe *that duty*, and that the court described two several and distinct duties which defendant owed plaintiff. The contention that the court should have given a definition of what constituted boarding a car probably was suggested from a consideration of the point here raised. We have already passed that objection; but we may add that the decisions of this court and the authorities examined define the duty of street railways relative to passengers getting on and off their cars as follows:

" ' The time of stoppage must be such as to enable the passenger attempting to get on or off to reach a place of safety, either on the street or in the car before it is started.' 6 Cyc. pp. 611, 615, 616, and cases cited." *Beattie* v. *Railway*, 158 Mich., at page 246 (122 N. W. 558), and cases cited.

This is the accepted law, very simply stated. The term "boarding" the car used by the pleader and counsel and court is certainly not misleading. Everybody understands that it means getting on the car. The duty owed to the passenger attempting to do this, as just stated, need not be repeated. It is one continuing duty towards a passenger from the initial attempt until final accomplishment. The fact that a breach of this duty might occur at any time while a passenger is getting on or off from a car does not segregate it into separate and distinct duties. Reading the foregoing excerpts and the entire charge, we find that in this respect the charge of the court was without prejudice and not misleading.

5. Immediately after the accident, plaintiff was taken to the office of Dr. McLean, which was near at hand, where his injury was examined and treated. The three companions who were with him before and at the time of the accident assisted in taking him to the doctor's office and were present when he was examined. Defendant offered to show that while there certain statements were made to the doctor by him, plaintiff being conscious and cognizant of what was going on around him, relative to where they took this car; where they signaled to stop it to get off; how plaintiff got off; and where the car finally stopped—the substance of which was taken in writing by him at the time for the purpose of making a report. This offer was for the purpose of showing admissions made by plaintiff or by others in his hearing contrary to the claim which he was urging at the trial, to show inconsistent statements made by plaintiff or by others, so long as it appeared that if they were made by others they were made in his presence and hearing. Objection was made

on the part of the plaintiff that this was impeachment and no ground had been laid for it. Defendant contended that the evidence was not impeaching in any sense; that it amounted to admissions on the part of plaintiff by silence or acquiescence. The doctor stated that he "could not say what particular man said it, but among them I got the facts."

The court excluded the evidence as impeaching as to all but the plaintiff, who had been cross-examined upon the matter. Plaintiff had testified that when in the doctor's office he was conscious and his mind was perfectly clear. It appeared from the testimony of one of them that the party had taken two drinks before taking the car. It is urged that the evidence was very material as showing the condition of plaintiff at the time of the accident which the report of the doctor indicated. The report was not offered as substantive evidence, but to identify the subject-matter.

It is not claimed by defendant that these parties actually stopped the car and got on at another place than that proved and practically admitted. The testimony of the doctor offered, if admitted, would show that these statements, made immediately after the accident, were that they got on the car at McLellan avenue, one block east of Belvidere avenue, and rang the bell to get off at Belvidere; that the car did not stop until it reached Holcomb; that plaintiff got off the car while it was going and the others got off at Holcomb. The real purpose for which this evidence was offered was to show that plaintiff was intoxicated, and not to establish the truth of the facts stated. The record clearly shows that those statements were not true. Under the circumstances of this case, on the offer made, the evidence was properly excluded.

6. The closing argument of counsel is objected to as unfair and prejudicial. The record shows what this argument was, and that it was excepted to at the time. The usual excuse is made that it was in answer to argument made by the other side, and, as is usual in such cases, the

claimed argument does not appear in the record. It is urged that the objection was not ruled upon by the court and therefore cannot be reviewed, citing *Pierson* v. *Railroad Co.*, 149 Mich. 167 (112 N. W. 923), and other cases. These decisions are very familiar to the profession and are controlling in the instant case. The court in this case did not rule upon the objection. This rule requiring a ruling is the same applied to other objections made during the trial, and care should be taken by the profession to keep it in mind to protect litigants from serious prejudice by arguments of this character. We do not say that there may not be exceptions to this rule.

No reversible error appears in the case.

The judgment is affirmed.

MOORE, BROOKE, BLAIR, and STONE, JJ., concurred.