## DOUB & CO. v. TAYLOR.

No. 4452.   Opinion Filed July 6, 1915.

(150 Pac. 682.)

1. **BROKERS—Right to Commission—Performance.** Where an agent for a stipulated commission undertakes to sell certain property at a given price, and pursuant thereto brings the seller and buyer together, he is entitled to such commission, even though the vendor accepts a less sum than that so designated as the basis of the sale.

2. **TRIAL — Instructions — Evidence.** Instructions examined, and held to state the law of the case.

(Syllabus by Bleakmore, C.)

*Error from District Court, Oklahoma County;*
*Geo. W. Clark, Judge.*

Action by J. B. Taylor against Doub & Co., a corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

*Loyal J. Miller,* for plaintiff in error.

*Wright & Blinn,* for defendant in error.

Opinion by BLEAKMORE, C.   This proceeding in error is brought to review the action of the district court of Oklahoma county in a case wherein the defendant in error was plaintiff and the plaintiff in error was defendant. The parties will be referred to as they appeared in the trial court.

On June 22, 1911, plaintiff filed his petition, alleging, in substance, that on the 15th day of April, 1911, defendant employed him to procure a purchaser for the Oklahoma contract for Doub's Series of Books for the sum of $12,200, and agreed to pay him therefor as com-

mission the sum of $500; that pursuant to said employment plaintiff procured and brought to defendant a purchaser for said contract at the agreed price, whereupon the defendant agreed to and did reduce the purchase price in the sum of $200, and sold said contract to said purchaser for $12,000.

Defendant answered by way of general denial, and pleaded that on the 12th day of May, 1911, it authorized plaintiff to sell said contract for $12,200 cash, and agreed to compensate him if the sale was made upon said terms, but that before the sale it revoked such authority and agreement; that plaintiff failed to make any effort to sell said contract for the price and on the terms aforesaid, and that, if any effort whatever was made by him to sell the same, it was an attempt to sell for a much larger sum, with the fraudulent intent on the part of plaintiff to obtain commissions from the purchaser as well as defendant; that prior to the 12th day of May, 1911, plaintiff was attempting to form a company for the purchase of said contract, and in so doing was acting entirely on his own behalf, and not as agent of defendant, with the expectation of acquiring a large interest in and profitable position with such company; that all his negotiations with third persons with regard to the purchase of said contract were in the interest of such proposed company; that prior to the alleged sale plaintiff informed defendant that he had abandoned and would have nothing further to do with the matter; that the sale in question was made by defendant without the aid of plaintiff; that plaintiff did not offer said contract to the purchaser for $12,200, but, on the contrary, never offered to sell it for less than $15,000.

The case was tried to a jury, which returned a verdict for plaintiff in the sum of $500, and judgment was rendered accordingly.

There are 14 assignments of error, those urged in the brief being: (1) Refusal of the court to give an instruction requested by defendant; (2) the giving of certain instructions, excepted to by defendant; (3) that the evidence is insufficient to sustain a recovery on the contract of employment pleaded; (4) that the verdict and judgment should have been for defendant; and (5) the judgment is contrary to the evidence.

The court refused to instruct the jury, at the request of defendant, as follows:

"You are instructed that it is the duty of an agent to use the utmost good faith toward his principal, and that he cannot recover a commission for a sale unless he used such good faith toward his principal, the defendant."

While in the abstract the proposition of law contained in the requested instruction may be correct, yet the necessary inference is that the trial court in refusing to so instruct the jury in the instant case concluded that it had no applicability to the evidence adduced. An examination of the record inclines us to the view of the court below, there being no showing of fraud, breach of confidence, or bad faith on the part of plaintiff in his dealings with defendant, and we therefore hold that the failure to give said instruction was not prejudicial to the rights of defendant.

Defendant was desirous of disposing of the contract in question. Its president, W. C. Doub, had been in Oklahoma City, and negotiations looking to this end were pending between him and the plaintiff. It seems that

the plaintiff, for a time at least, was considering the formation of an association for this purpose. He failed to effectuate his design in this regard, and communicated to Mr. Doub, who was in Indianapolis at the time, his intention not to pursue it further. The following, among other communications, passed between the parties:

"OKLAHOMA CITY, Apr. 28, 1911.
"Mr. W. C. Doub, Indianapolis, Ind.—My Dear Doub: I have been out of the city for some weeks, hence my delay. Things do not look promising to me, hence I cannot see my way clear to take your contract. I am sorry to have caused you delay in this matter. A. B. C. has the field and are good with it. That is common belief and is whispered by everybody in close touch with the situation. If I can serve you in any way by lining anybody up for you, I shall take pleasure in doing so.
"Your friend,    J. B. TAYLOR."

"Dear Doub: Your letter just received. If you will wire me that you will take $17,000, and no less, I may be able to swing the deal. Can you do any better on your speller in the way of royalty for second Oklahoma contract? That seems to be the bugbear. I may be in shape to answer definitely tomorrow, if not then will next day.
"Yours truly,    J. B. TAYLOR."

"May 6, 1911.
"To Mr. J. B. Taylor, 627 E. Fourth St., Oklahoma City, Okla.: Letter received. Cannot accept less than seventeen thousand dollars or less royalty on speller, but next speller contract should be twenty-five cents.
"W. C. DOUB."

"OKLAHOMA CITY, OKLA., May 10, 1911.
"Mr. W. C. Doub, Indianapolis, Ind.—My Dear Doub: I have canvassed the situation here thoroughly and find it impossible to get any one interested in your proposition for more than twelve thousand and two hundred dollars ($12,200.00). One concern has said it would give that amount for the business. Inasmuch as I have been selected

for a position which pays a good salary, I hardly feel justified in taking up the book business. If you will advise me to close the contract with this party for that amount, I believe I can do so, although it is possible that it is only talk. I have found a great deal more talk than action lately. Of course, I shall expect some compensation, for I have given quite a little time to this; that is, if I should put the deal through for you.

"Your friend,      J. B. TAYLOR,
"627 E. 4th Street."

"INDIANAPOLIS, IND., May 12, 1911.
"Prof. J. B. Taylor, 627 E. Fourth Street, Oklahoma City, Okla.: If you can close the deal for the amount stated in your letter, in cash or notes cashable, I will give you five hundred. Have contract same as one I left with you, but rewrite so as to have the amount stated correctly. Will expect party to look after adoption in other states, unless he wishes only Oklahoma. Keep me informed daily by wire at my expense, as I wish to arrange about Chicago office as soon as this contract is closed. Use Postal Telegraph. Address letters to general delivery.      W. C. DOUB."

"TELEGRAM.
"OKLAHOMA CITY, OKLA., May 15, 1911.
"To W. C. Doub, Indianapolis, Ind.: Party unable to decide till Saturday on Booster trip.
"J. B. TAYLOR."

"May 15, 1911.
"Prof. J. B. Taylor, 627 E. Fourth Street, Oklahoma City, Okla.: Telegram received. Get matter in shape. Will be in Oklahoma Thursday or Friday.
"W. C. DOUB."

Mr. Doub, president of defendant company, arrived in Oklahoma City on the 18th day of May. Plaintiff met him at the train, informed him of the name and financial responsibility of the prospective purchaser, and brought them together in the room of the president at a local hotel.

The sale of the contract was consummated on the 31st day of May, in the absence of plaintiff, for $12,000 and certain royalties, being $200 less than the cash price fixed in defendant's letter of May 12th, *supra*, Plaintiff testified that he was in daily communication with defendant's president, Mr. Doub, between the 18th of May and the closing of the sale; that Mr. Doub suggested that it would be better if the purchaser did not know of his interest; that after the consummation of the transaction Mr. Doub promised to pay him the commission of $500, $300 on June 15th, and $200 later, when plaintiff was to attend a meeting of an educational association at Los Angeles. Mr. Doub testified:

"Q. After sending the telegram of May 15, 1911, did you return to Oklahoma? A. I did, and reached Oklahoma City on May 17 or 18, 1911. Q. Did you meet Mr. Taylor about the 17th or 18th of May? A. I met him on my arrival in Oklahoma City. Q. State what conversation occurred between yourself and Mr. Taylor, on or about the 17th or 18th of May, upon your return to Oklahoma City from Indianapolis? A. I said to him substantially: I withdraw my offer to you for a commission as stated in my telegram of May 12, 1911, and told him I wanted to organize a company for the states named above for a period of ten years, instead of five years, as provided in the contract which I had handed him under date of March 29th. I asked him if he would try to organize this company, and he said he would. For the next two or three days Mr. Taylor devoted his time in attempting to organize this company, and finally reported that he could not succeed in the matter, and asked me to count him [Taylor] out definitely. I then asked him to return to me the copies of the contract dated March 29th, which he did the next day. Not being able to make a deal for all the states mentioned above, I finally sold the state of Oklahoma to the Warden Printing Company, and on May 31st they signed the contract with Doub & Co. for the

state. Either on the day the contract was signed, or the next day, I telephoned Mr. Taylor. to meet me at the train, as I wished to say good-bye to him and discuss with him future adoptions in the territory of New Mexico, where he informed me he was going to teach the next school year. Mr. Taylor met me at the train about three minutes before it pulled out, and spoke about the commission referred to in my telegram of May 12th. I told him I was surprised at his referring to the matter, as I did not suppose he thought for a moment that under the circumstances anything was due him. On June 10th I wrote him, stating that after going over the whole matter carefully I was more thoroughly convinced than when I spoke to him at the station in Oklahoma City that nothing whatever was due him, and that I could not charge Doub & Co. for any commission. Q. State whether or not Mr. Taylor ever closed the deal mentioned in his letter of May 10, 1911, for the sum of $12,200 as therein referred to? A. He did not, and I learned he made no attempt to do so, and that he never offered the contract in any form to any one for less than $15,000. Q. How long was the offer contained in your telegram of May 12th to pay Mr. Taylor the commission therein referred to in effect? A. From the date of my telegram, May 12th, to my arrival in Oklahoma City on the 17th or 18th of May, 1911, when the offer was withdrawn, as explained before. Q. Did Mr. Taylor consent to the withdrawal of the offer at that time? A. He did, and went to work immediately trying to organize a company, as I have stated before."

It is contended that there was error in the giving of the following instruction:

"I believe the plaintiff does not claim, in his evidence, that the sale which was made was made personally by the plaintiff, but he does claim that it was through his instrumentality and under the contract which he had with the defendant that the sale was made, that he brought the parties together, and that the sale which was afterwards made was really the fruits of his own efforts, and

that he is entitled to recover; and if you should find that to be the case, then, notwithstanding the same may have been closed up by the defendant in the absence of the plaintiff, and even if a less sum than the defendant had theretofore authorized the plaintiff to make the sale for, such facts would not deprive the plaintiff of the right to recover under the contract, if you shall find, from the evidence, by a preponderance thereof, that the plaintiff did find a purchaser who was able, ready, and willing to make the purchase, and brought the parties together within the time limited, and that the trade or sale was actually consummated, although in the absence of the plaintiff, and for a less sum."

The rule announced in *Prindle v. Allen*, 164 Mich. 553, 129 N. W. 695, that "where a real estate agent for a stipulated commission undertakes to sell certain property at a given price, and brings the vendor and purchaser together, he is entitled to his commission, even though the vendor accepts a lower price in order to consummate the sale," seems to apply with peculiar force in this case. See, also, *Alexander v. Breeden*, 14 B. Mon. (53 Ky.) 154. This court, speaking through Mr. Justice Williams, in *Roberts v. Markham*, 26 Okla. 387, 109 Pac. 127, stated the rule to be:

"Brokers—Right to Commission. If, after the lot or realty is placed in the agent's hands for sale, it is brought about and procured by his advertisements or exertions, he will be entitled to his commission, or if the agent introduces or discloses the name of the purchaser to the vendor for such purpose, and through such introduction or disclosure negotiations for the sale of the property are begun, and then effected by the vendor, the agent is entitled to his commissions."

See, also, *Eichoff v. Russell*, 46 Okla. 512, 149 Pac. 146.

The doctrine is the same when applied to sales of
personal property. If plaintiff produced a purchaser for
the contract in question, and, pursuant to his agreement
with defendant, brought such purchaser and defendant
together, and as a result thereof the sale was consum-
mated, the fact that defendant voluntarily accepted a
slightly less sum than that designated as the basis of the
sale in its contract of employment with plaintiff would not
defeat his right to recover the commission due him, had
the purchaser paid the price originally demanded. When
plaintiff procured a purchaser ready, willing, and able to
buy, he had performed his part of the agreement; that
such purchaser thereafter demanded and obtained of de-
fendant a better bargain for himself than plaintiff was
authorized to offer, was a matter entirely between him
and defendant, and over which plaintiff had no control.
Defendant, as principal, and not plaintiff, its agent, was
chargeable with the change in the purchase price. We
have examined the charge of the court as a whole, and
it states the law of the case.

It is contended that the offer to pay plaintiff $500
as commission was withdrawn on May 18th, when the
president of the defendant company reached Oklahoma
City, and therefore no recovery could be had on the con-
tract sued on. In this respect the testimony is not har-
monious. It is further urged that the evidence is insuf-
ficient to sustain the judgment. While the evidence is
conflicting, in our opinion it adequately suffices to support
the verdict. In *Eichoff v. Russell, supra,* it is held that:

"In an action by a real estate broker to recover com-
mission for procuring the sale of the owner's property,
the question as to whether or not he was the procuring
cause of the sale is one of fact for the jury."

The same rule applies here. It follows that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.