## EUREKA FIRE HOSE MFG. CO. v. TOWN OF GRANITE.

No. 7336—Opinion Filed July 11, 1916.

(159 Pac. 308.)

**Municipal Corporations—Indebtedness—Constitutional Limitation.**

Under section 26, article 10, of the Constitution of the state of Oklahoma, a town council has no power, without an express vote of the people authorizing it, as provided for in said section of the Constitution, to create a present indebtedness to be paid out of the revenues of future years.

(Syllabus by Brunson, C.)

Error from District Court, Greer County; G. A. Brown, Judge.

Action by the Eureka Fire Hose Manufacturing Company against the Town of Granite, to recover the sum of $1,597.60 on a written contract. Judgment for defendant and plaintiff brings error. Affirmed.

Carpenter & Mills, for plaintiff in error.

B. F. Van Dyke, for defendant in error.

Opinion by BRUNSON, C. This action was begun by the plaintiff in error, a corporation, in Greer county, state of Oklahoma, defendant in error, for the purchase price of certain fire hose equipment. The plaintiff in error based its claim upon a certain written contract made and entered into by and between said corporations on the 13th day of November, A. D. 1909. This suit was filed on the 6th day of April, A. D. 1912, and there was attached to the petition a copy of the written contract, which reads as follows:

"Contract and agreement made this 13th day of November, A. D. 1909, by and between the Eureka Fire Hose Manufacturing Company, of New Jersey, party of the first part, and corporation of the town of Granite, in the county of Greer and state of Oklahoma, party of the second part: Witnesseth, that the party of the first part hereby agrees to furnish the party of the second part in good order 1,500 feet of their Trumpet Double Jacket Brand of fire hose, coupled complete, two and one-half inches internal diameter, and capable of standing a pressure of 400 pounds per square inch when delivered, at 85c per foot. And the said party of the first part further warrants and agrees, that should any of said hose fail or give out within thirty-six months after date of purchase, from any cause due to defect in manufacture or material, to replace the same free of charge on return of such defective lengths. And the said party of the second part hereby agrees to accept the said hose if delivered in accordance with above specifications, and if not in accordance therewith, they hereby agree to notify the said party of the first part of any defect that may exist therein within ten days from date of delivery of said hose to them. If no notification be received within the period above stated, it shall be deemed and considered that said hose has been accepted by the party of the second part. And thereupon the said party of the second part hereby agrees to pay the said party of the first part for the said hose the sum of twelve hundred and seventy-five and no/100 dollars. Terms: One and two years, 1st 6 months without interest, then 6 per cent per annum.

"In witness whereof, the parties hereto have hereunto set their hands and seals the day and year above written. Eureka Fire Hose Manufacturing Co., by P. O. Herbert, Sr., Mgr. [Seal.] Per A. C. Hopper. [Seal.] Inc. Town of Granite, Oklahoma, by S. M. Alexander, Pres. [Seal.]

"Six Underwriters' play pipes; 2 shut-off nozzles at $15.00 each; 1 doz. Tabor spanners: 2-500 ft. capacity Underwriter's reels at $65.00 each, f. o. b. factory (2-3). B. F. Van Dyke. [Seal.] W. R. Veale. [Seal.]"

It is alleged: That there is due under this contract for the articles mentioned therein, principal and interest, the sum of $1,597.60. That the plaintiff in error complied with this contract, and delivered each and every article therein mentioned to the defendant in error, and that the defendant in error accepted the same, made no objection or complaint to the company on account of defective material, and that the town of Granite, though often requested, has neglected and failed to pay the purchase price of said hose and other articles. That on the 19th day of December, A. D. 1912, the defendant in error filed its first amended answer to said petition, which said first amended answer denied: (1) Generally the allegations of plaintiff's petition, and pleaded especially that the contract sued on was entered into on behalf of defendant by persons unauthorized so to make and enter into said contract, for the reason that said contract was not agreed and entered into at a regular session of the board of

trustees of said town, as required by law and the ordinances of said town, nor was it entered into at any special meeting of the board of trustees of which any minutes were kept; that it was not attested by the clerk of said town, and for such reasons was ultra vires and void; (2) that said contract was an agreement for the purchase of certain property in excess of the $500 limitation fixed by law, the purchase not having been authorized by a majority vote of the electors resident of said town; (3) that at the time the contract was entered into there were no funds. of the incorporated town of Granite on hand in the treasury of said town or legally levied out of which any payment could have been made on said contract; (4) that the expenses of the incorporated town of Granite for the years 1910 and 1911 (during which years payments were to be made) consumed and exhausted its current revenue: (5) that no vote of the electors of said town had authorized the creation of said obligation or indebtedness, and that said contract is within the inhibitions contained in sections 26 and 27, article 10, of the Constitution of the state of Oklahoma, and is therefore null and void.

Thereafter, on the 17th day of August, A. D. 1914, the plaintiff in error filed its reply to this first amended answer, denying generally all of the matters and things therein contained. Upon the issues thus joined this case went to trial on the 17th day of August, A. D. 1914, to the court without a jury. When the plaintiff in error closed its evidence, the defendant in error filed a demurrer to the same, which was by the court overruled and exceptions saved. The defendant in error then offered its evidence, and at the close of its evidence the plaintiff in error filed a demurrer, which was by the court overruled and exceptions saved. The court then took the case under advisement and continued it until the 3d day of November, A. D. 1914, when judgment was rendered in favor of the defendant in error, and on the same day and at the same time the plaintiff in error filed a motion for a new trial, which was by the court heard and overruled, to which action of the court exceptions were saved, and time given in which to make, serve, and settle case-made, and the case is before us on appeal.

The defendant in error admitted that the copy of the contract attached to the plaintiff's petition was substantially a copy of the contract sued on: that the articles mentioned and described in said contract were received by the town of Granite; that they were never returned to the plaintiff in error, and were never paid for: that demand for payment had been made and refused: that

there was no record made in the minutes of the town of Granite of any resolution authorizing the execution of the contract sued upon; that the party who was clerk of said town at the time of the execution of said contract could not say whether said resolution was in fact ever passed; that he generally recorded anything that came up, and especially transactions like the one in question; and that he never knew anything about the contract of the kind sued upon. The town treasurer for the years 1909, 1910. and 1911 testified that during those years he was town treasurer: that no levy was made for the payment of any indebtedness to the plaintiff in error; and that there was no money in the town treasury to pay for the property on the date of entering into said contract.

It appears to us that the question involved here is, Does this contract fall within the inhibitions contained in section 26, article 10, of the Constitution of the state of Oklahoma, which is as follows:

"No county, city, town. township, school district. or other political corporation. or subdivision of the state, shall be allowed to become indebted, in any manner or for any purpose to an amount exceeding, in any year, the income and revenue provided for such year. without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor in cases requiring such assent shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness: Provided. that any county, city. town. township, school district, or other political corporation, or subdivision of the state, incurring any indebtedness, requiring the assent of the voters as aforesaid. shall, before or at the time of doing so. provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due. and also to constitute a sinking fund for the payment of the principal thereof within twenty-five years from the time of contracting the same."

It will be noted that the terms of payment under this contract are as follows:

"And thereupon the said party of the second part [the town of Granite] hereby agrees to pay the said party of the first part [Eureka Fire Hose Manufacturing Co.] for the said hose the sum of twelve hundred and seventy-five and no /100 dollars. Terms: One and two years. 1st 6 months without interest. then 6 per cent. per annum."

This contract was made and entered into on the 13th day of November. A. D. 1909: payments becoming due in 1910 and 1911.

There are four assignments of error, which are urged under three propositions, but we think that the only proposition that we need consider is whether or not this contract is a legal binding obligation against the town of Granite. At the time it was entered into the levy for that year had already been made, but the contract does not provide for payment out of the funds of the city during that year, but it does provide that payments shall be made in one and two years, which evidently means that they shall become due in November, 1910, and November, 1911, which would make these payments fall due after the levy for those years had been made, and the legality of this indebtedness is one of the issues the court must determine. It is argued, however, that this is a debt of honor, and that it is conceded that the town and its citizens received the benefit of and full value for the indebtedness. If this court were authorized to inaugurate policies "and to amend the Constitution to meet such contingencies, this argument might appeal to us with force. The framers of the Constitution, which Constitution the people have approved, thought it wise to place a limitation upon all the people and upon every political subdivision of the state, and if the municipality or any political subdivision of the state may, by its acts, exceed the limitations placed upon it by the Constitution, create a debt in conflict with it, it would simply mean the destruction of this provision of the Constitution. Section 26, art. 10, supra, provides that:

"No county, * * * town, * * * or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose."

It will be seen that it is intended by this part of the Constitution that the town of Granite, as well as all other political corporations or subdivisions of the state, shall keep its running expenses and expenditures within the income and revenues provided for that year. There is no provision in this section of the Constitution permitting such a municipal corporation to tie up the revenues of the town for one or two years in advance, as was undertaken to be done by defendant in this contract. This section does provide that any county, city, town, township, school district, or other political corporation or subdivision of the state may become indebted by vote of the people of such county, city, town, township, school district, etc., but that before doing so, or at the time of doing so, they shall provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to con-

tribute a sinking fund for the payment of the principal thereof within 25 years from the time of contracting the same. But there are no provisions in this section of the Constitution whereby the trustees of the town of Granite could become indebted in the manner attempted for one and two years to pay for the articles purchased. In Re Town of Afton, 43 Okla. 720, 144 Pac. 184, L. R. A. 1915D, 978, it is said:

"One who deals with a municipality does so with notice of the limitations on it or its agents' powers. All are presumed to know the law, and those who contract with a municipality or furnish it supplies do so with such knowledge; and, if they go beyond the limitations imposed, they do so at their peril."

"It is plain that the intention of section 26, art. 10, of the Constitution is to require municipalities to carry on their corporate operations upon a cash basis. The revenues and income provided for each year must pay the expenditures of such year; and any debt or contract sought to be created in excess of such revenues and income provided creates no liability against such municipality, unless it be authorized by a vote of three-fifths of the legal voters before or at the time of creating same, and comes within the limitations therein expressed."

Further on in the same opinion the court quotes with approval 28 Cyc. p. 1540, which states the rule as follows:

"'Pay as you go' expresses a municipal rule prevailing in some states that annual expenditures must be restricted to annual revenue, of which every person contracting with a municipal corporation must take notice at his peril."

Again on page 1560, Id.:

"A contract made by a municipality in excess of its debt limit, as fixed by the Constitution or by statute, is void, at least as to the excess; and every one dealing with a municipality is charged with notice of a limitation upon the amount of its indebtedness. Municipal indebtedness in excess of a constitutional limitation cannot be made good by ratification, since power to authorize originally is a condition precedent to the power to ratify subsequently. * * * A municipal contract, expenditure, or appropriation, invalid when made, may be cured by subsequent legislation, unless the invalidity result from a violation of a constitutional inhibition."

Upon a hearing of the issues in this case by the court the relief prayed for was denied, and we believe that the trial court's judgment was sound for the reason that at the time the contract was so entered into the board of trustees of the town of Granite was not authorized, and did not have the power, to say that the revenues for the years 1910 and 1911 should be applied to the payment

of this contract. If they could contract the revenues for the years 1910 and 1911 away under this section of the Constitution, they could contract away the revenues for any number of years. In the case of Fairbanks-Morse Co. v. City of Geary, 59 Okla. —, 157 Pac. 720, it is said:

"A debt which is in excess of the constitutional or statutory limit is void; and in no form can such debt be held valid upon any theory of quantum meruit, or equitable obligation. The absolute lack of power to contract such indebtedness bars every form of action and every legal device by which recovery is sought; nor will the courts aid the vendor to recover the property sold and delivered under such illegal contract."

In the body of this opinion the court approves the rule laid down in section 2174 of Gray's Limitation of the Taxing Power, as follows:

"A debt which is in excess of the constitutional limit is void; and in no form can such debt be held valid upon any theory of quantum meruit or equitable obligation. The absolute lack of power to contract the indebtedness bars every form of action and every legal device by which recovery is sought" (citing Litchfield v. Ballou, 114 U. S. 190, 5 Sup. Ct. 820, 29 L. Ed. 132; Hedges v. Dixon County, 150 U. S. 182, 14 Sup. Ct. 71, 37 L. Ed. 1044; Morton v. City of Nevada [C. C.] 41 Fed. 582; Brazoria County v. Youngstown Bridge Co., 80 Fed. 10, 25 C. C. A. 306; City Water Supply Co. v. City of Ottumwa [C. C.] 120 Fed. 309; Swackhamer v. Hackettstown, 37 N. J. Law, 191; McGillivray v. Joint School District, 112 Wis. 354, 88 N. W. 310, 58 L. R. A. 100, 88 Am. St. Rep. 969).

The plaintiff in error in its brief contends that that part of section 647 of the Compiled Laws of Oklahoma 1909, where it provides "that no real estate or personal property shall be bought or sold where the value of either said real or personal property contracted for at one purchase shall exceed five hundred dollars," applies to cities of the first class, but does not apply to incorporated towns. It is not necessary, under our view of the law applicable to this case, to pass upon this question.

From our view of the Constitution as applied to the facts here, we are forced to the conclusion that the board of trustees of the town of Granite had absolute lack of power to contract away the revenues for the years 1910 and 1911, and that this contract was void ab initio.

The learned trial court heard all the evidence and rendered judgment in favor of the defendant in error, and there is evidence in the record reasonably tending to support his finding and judgment.

Finding no error in the record, the judgment of the trial court is affirmed.

By the Court: It is so ordered.