## GILCHRIST v. WILCOX et al.

No. 13327—Opinion Filed April 15, 1924.

1. Brokers — Right to Commission.

If, after the lot or realty is placed in the agent's hands for sale, it is brought about and procured by his advertisements or exertions, he will be entitled to his commission, or if the agent introduces or discloses the name of the purchaser to the vendor for such purpose, and through such introduction or disclosure negotiations for the sale of the property are begun, and then effected by the

vendor, the agent is entitled to his commissions.

## 2. Same—Procuring Cause of Sale—Rights as Between Brokers.

Where a real estate broker has a piece of land listed to him for sale, and he shows the land to a prospective purchaser and takes him to the owner and introduces him and only prices the land to the purchaser, and he remarks that the price is too high, that he does not want to put that much money in the land, and he and the broker leave and the prospective purchaser goes home, and some time thereafter another broker, who also has the land listed with him, meets up with the person whom the first broker had introduced to the owner, and in conversation the prospective purchaser said he would like to buy that piece of land, but the price was too high, and that he did not have money to pay cash for it, and after he and the second broker talked the matter over the broker agreed to try to get the price reduced and also agreed to assist the purchaser in getting the money needed to buy the land, and the broker does succeed in getting a reduction in the price and makes arrangements to carry the purchaser for the amount of money needed and makes a loan to him, in an action to determine which of the brokers is entitled to the commission, held, that the second broker was the procuring and efficient cause of the land being sold, and not the first broker, and that the second broker was entitled to the commission.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Dewey County; T. P. Clay, Judge.

Action by Charles Gilchrist against J. W. Wilcox and Edd Campbell to recover commission on a sale of certain real estate. Judgment for defendants, and plaintiff appeals. Affirmed.

This is a controversy between two brokers over the commission for the sale of a certain piece of real estate. The owner of the real estate, Edd Campbell, concedes that he owes a commission of $290 to one of the brokers, either Gilchrist or Wilcox, and tenders the money into court and asks that the court decide which broker is entitled to the commission. The plaintiff, Gilchrist, alleges that on the 21st day of January, 1921, he entered into an oral agreement with Edd Campbell, the then owner of the land, to find a purchaser for the land owned by said Campbell, and that Campbell agreed to pay him, as commission on the sale thereof, the sum of five per cent. of the amount for which the land sold; that in pursuance of the said contract, in the month of August, 1921, ne found a purchaser for said land, one Wal-

lace H. Watson, and took said Watson to see said land and to see Edd Campbell, the owner thereof. No deal was closed but Watson said he would think the matter over and went back to his home in Woodward. No further steps or negotiations between Wallace and Gilchrist were had in regard to the sale. It appears, from the evidence, that Watson came to Seiling, where both Gilchrist and Wilcox reside, and also the defendant Campbell resided close to Seiling on the land which was sold to see Wilcox, whom he knew. Watson made some inquiry for Wilcox, and went to his place of business and found that he was out of town. He afterwards went to Gilchrist's office and talked with him about some grass land and Gilchrist told him he had some and showed him two or three pieces of land, among which was the land belonging to Edd Campbell, and which Campbell had asked him to find a purchaser for. The land belonging to Edd Campbell seemed to strike Watson more favorable than the other pieces and Gilchrist took Watson to Campbell and told him that he was looking for a piece of grass land and rather liked the looks of his. Some conversation was had among the parties about the land. Finally Watson asked the price and Campbell priced it at $6,000 cash. Watson thought that was too high, stating that he did not want to put that much money in it, but agreed to think the matter over, and he and Gilchrist left and went back to town and Watson went back to his home in Woodward. Some days afterwards, two or three weeks, Wilcox had heard about Watson being in town and looking for some land and he went to Woodward and met Watson and talked to him about selling him some grass land and Watson mentioned the Campbell tract and Wilcox told him that land was listed with him and he would like to make a deal on it. Watson objected to the price as being too high, and asked Wilcox if he did not think he could get Campbell to cut it down a little, and Wilcox said that he might be able to and would try. Watson then told Wilcox that he would have to raise some money in order to buy it if they could agree on the price, and asked Wilcox if he thought they could arrange to carry him for part of the purchase price. Wilcox told him he could arrange that, and a few days afterwards Watson went down to Seiling to see Wilcox and they drove out to Campbell's, and, after some negotiations, Campbell agreed to take $5,800, and Wilcox agreed to carry a loan on the place for part of the purchase price, and did arrange with the School Land Department to make a loan on the place for the amount of money that Watson needed, and the deal was closed. Some days aft-

erwards Gilchrist told Campbell that he was entitled to his commission as he brought Wallace and Campbell together. Wilcox also claimed a commission and Campbell declined to pay either, and Wilcox brought this suit, and Campbell admitted that he owed one of them a commission of $290 and paid the money into court and asked the court to decide which one of them was entitled to the commission. The case was tried before the court, a jury having been waived, and the court found in favor of Wilcox, and judgment was entered in favor of Wilcox for the money Campbell had deposited in court. After a motion for new trial was filed and overruled, the case was brought to this court for review. The sole question in the case, as brought and tried, is which one of the brokers is entitled to the commission. The parties will be referred to as they appeared in the court below.

W. P. Hickok, for plaintiff in error.

A. G. Wood, for defendants in error.

Opinion by MAXEY, C. The contention of plaintiff, Gilchrist, is that he is entitled to the commission because it was he that brought Wallace, the purchaser, and Campbell together. It is not contended that he took any part in making the sale at the time it was made. The evidence shows that Wallace had given up the matter of buying this land and would not have bought it if Wilcox had not gone to see him and arranged to try to get the price reduced and agreed to assist him in getting a loan on the place for the amount of money that he needed to purchase the land. Wallace stated in his testimony that he had made up his mind that he would not buy the land unless he got it for less money, and evidently was giving the matter no consideration until Wilcox came out and opened up the negotiations and found that Wallace did not have money enough to pay cash for the land. Wilcox agreed to try to get the price reduced and agreed to assist Wallace in getting money to complete the purchase. Wallace went down to Seiling and saw Wilcox and they drove out and saw Campbell and closed the deal. It will be remembered that Wallace went to Seiling to see Wilcox in the first place, but he being out he fell in with Gilchrist and got to talking to him about some grass land and Gilchrist showed him some land, among which was the land belonging to Campbell. He brought Campbell and Wallace together, but no deal was made. Wallace stated that the price was too high. Counsel for plaintiff in his brief relies upon the rule that where a broker produces a purchaser, ready, willing and able to purchase, and who does afterwards purchase the land from the owner, that the

broker is entitled to commission. This rule has been stretched the limit in order to protect brokers from being beat out of their commission. But does that rule apply in this case? It is true that Gilchrist brought Wallace and Campbell together, but nothing came of his bringing them together, because Wallace thought the price was too high, and he did not have sufficient money to pay cash. He agreed to think it over and left, and went home. At the time Wilcox went to see him, he said that he had given up all idea of buying the land, for the reason that he thought the price was too high, and that he could not pay all cash, and therefore it would be impossible for him to make the deal on the terms proposed at the time Gilchrist took him out to see Campbell. So that, in our judgment, Gilchrist taking Wallace out to see Campbell was not the procuring cause of Campbell getting a purchaser for his land. It seems to us that the procuring cause, and the one that moved Wallace to purchase the land, was getting a reduction of the price and Wilcox agreeing to assist him in getting the money that he needed to complete the deal. It is evident from the testimony that no deal would have been made with Wilcox if he had not gotten a reduction of the price and agreed to assist Wallace in getting the money to complete the deal. The trial court evidently took this view of the case and awarded the money paid into court by Campbell to Wilcox. The counsel for plaintiff in error has cited a great many cases from other jurisdictions which are practically the same as the decision of our own court. But so far as we have examined the cases cited, the facts are so different from the facts in this case that we do not think they are applicable. The case of Roberts v. Markham et al., 26 Okla. 387, 109 Pac. 127, has been followed by this court up to the present time. The second paragraph of the syllabus of that case is as follows:

"Brokers—Right to Commission. If, after the lot or realty is placed in the agent's hands for sale, it is brought about and procured by his advertisements or exertions, he will be entitled to his commission, or if the agent introduces or discloses the name of the purchaser to the vendor for such purpose, and through such introduction or disclosure negotiations for the sale of the property are begun, and then effected by the vendor, the agent is entitled to his commission."

This opinion has been followed by this court in many cases, among which are Eichoff v. Russell, 46 Okla. 512, 149 Pac. 146; Doub & Co. v. Taylor, 48 Okla. 713, 150 Pac. 682; Treese v. Shoemaker, 80 Okla. 235, 195 Pac.

766. The second paragraph of the syllabus of the last cited is as follows:

"Brokers—Right to Commission—Procuring Cause in Securing Lease. A broker employed to secure a lease is entitled to his commission if during the continuance of his agency he is the efficient or procuring cause of the execution of the lease, though the actual agreement for the lease is made by the principal with the owner of the land; and the broker will be regarded the procuring efficient cause if his efforts are the foundation upon which the negotiations resulting in the execution of the lease are begun."

It is clear to our minds, from the evidence in this case and the rule laid down in the foregoing cases, that the plaintiff, Gilchrist, was not the procuring cause of Campbell making the sale, for it is clear from the testimony that Wallace would not have given the matter of buying this land any further consideration if Wilcox had not gone to him and procured a reduction in the price and arranged to carry him for part of the purchase money. This was the procuring cause and not the bringing of the parties together by Gilchrist. We are of the opinion that the case was fairly tried, and that the evidence amply supports the judgment of the court. and under the rule that where a case is tried to the court without a jury that its findings on the evidence has the same binding force as the verdict of the jury, the judgment in this case should, in all things, be affirmed.

By the Court: It is so ordered.