## LASOYA OIL CO. v. JARVIS.

No. 29897.  April 28, 1942.

Rehearing Denied June 9, 1942.
Application for Leave to File Second Petition for Rehearing Denied July 7, 1942.

*127 P. 2d 142.*

Harold E. Rorschach, of Tulsa, Jack L. Rorschach, of Vinita, and C. B. Holtzendorff, of Claremore, for plaintiff in error.

W. B. Blair, of Tulsa, for defendant in error.

DAVISON, J. This is an action by a broker against his principal to recover a broker's commission alleged to be due by reason of a sale of oil and gas leases by the principal to a purchaser whom the broker claims to have procured.

It was instituted in the district court of Rogers county on the 20th day of August, 1938, by Emmett Jarvis (the broker) as plaintiff, against the Lasoya Oil Company (the principal and property owner) as defendant. The defendant is a Delaware corporation, domesticated in Oklahoma.

Issues were joined and the cause was tried to a jury in January of 1940, resulting in a verdict and judgment for the plaintiff in the sum of $3,375. The defendant company has appealed, thus reversing the order of appearance in this court. Our continued reference to the parties will be by their trial court designation.

At the time of the consummation of the sale in connection with which the broker claims a commission, the principal had no knowledge of the broker's alleged activity in soliciting and procuring the particular purchaser, and the sale was consummated at a much lower price than the broker had been authorized to submit to prospective purchasers.

It is the general rule that if the owner of property lists the same for sale with a broker and then sells directly, at a reduced price, to a purchaser the broker has found and with whom he was negotiating a sale without having introduced him to his principal, then the owner is liable to the broker for a commission on the price received. Combs v. Langston Inv. Co., 100 Okla. 21, 227 P. 94; Doub & Co. v. Taylor, 48 Okla. 713, 150 P. 687; Schlegel v. Fuller, 48 Okla. 134, 149 P. 1118; Roberts v. Markham, 26 Okla. 387, 109 P. 127.

This general rule is not favored in all jurisdictions and is not without its exceptions in jurisdictions which favor its application. See Annotation, 43 A. L. R. 1103.

The difficulties which may and do arise from the unrestricted application of the rule are noted by Mechem in his work on Agency (2d Ed.) p. 2018, par. 2436:

"It must be conceded, nevertheless, that this rule which permits the broker to recover commissions for 'finding' a purchaser whom he has neither actually brought forward, identified, nor claimed as his own until after the sale was completed, is one prolific of litigation and trouble. It encourages claims, difficult to meet. If often seems to lay a trap for a perfectly conscientious principal who has dealt, on terms or conditions which he would not have been willing to make if he had known that he must pay a commission, with a buyer whom he supposed, in good faith, he had found by his own efforts, or who, at least, was not one whom the broker had found or induced to purchase."

At a later point in the same paragraph, the learned author concludes:

"On the other hand, it is doubtless true not only that the payment of any commission in many cases seems most unfair to the principal, who feels that the broker's services were slight or wholly unnecessary, but also that the cases are numerous wherein a dishonorable or disingenuous principal, aided sometimes by the connivance of the buyer, is altogether too ready to reap the fruits of the broker's efforts while seeking to evade paying for his services.
"The remedy could be found either in more explicit contracts with the broker,

or in a more inflexible rule that the purchaser is not to be deemed to be found until the broker has, in some unequivocal way, brought him to the attention of the principal before the negotiations are closed."

The solution suggested by the learned author has been approved by some courts. For instance, the New Mexico court, in Las Vegas Realty & Ins. Co. v. Sparks, 29 N. M. 77, 218 P. 345, announced and applied the following rule:

"Where property is shown a prospective customer by a real estate broker, and the prospective purchaser definitely refuses to purchase the same, and the negotiations are abandoned by all of the parties, or where a real estate broker fails to disclose to the owner the fact that he is dealing with a given proposed purchaser, and the owner deals directly with the purchaser and sells to him at a less price than the property was listed with the broker, relying upon his exemption from the payment of commissions, there is no right of recovery on the part of the broker."

The foregoing New Mexico case was recently cited by this court, but distinguished without approval of the rule therein announced. Cales v. Pattison, 189 Okla. 160, 114 P. 2d 457. Notice, also, Quist v. Goodfellow, 99 Minn. 509, 110 N. W. 65.

It is at once apparent that in practical operation the distinction between the true rules is that, under the general rule found in this jurisdiction, the principal, in order to protect himself in making a sale of property which he has listed with a broker, must usually, in order to be secure against a claim for commission by the broker, inquire of the broker and ascertain whether the broker claims to have been instrumental in arousing the purchaser's interest in the property, whereas under the rule suggested by Mechem and approved by the New Mexico court in the above-cited case, the burden is on the broker to keep his principal advised of the identity of prospective purchasers.

Either view, if arbitrarily applied in all cases, may, as indicated by Mechem,

become an instrumentality of fraud or give rise to unfair claims.

We deem it inappropriate to depart from or repudiate the general rule in this jurisdiction in view of our previous approval thereof, and in view of the apparent fact that such departure might likewise result in injustice. However, we do not deem it a departure to recognize the existence of limitations on and exceptions to the rule insofar as such limitations and exceptions are essential to the requirements of justice and fair dealing.

The qualified character of the rule is recognized in Restatement of the Law, Agency, vol. 2, p. 1055, wherein it is said:

"Ordinarily, a broker who has been the effective cause of a transaction is entitled to the agreed commission although the principal does not know that the broker has played a part in the negotiations and although the principal, because of this ignorance, has made lower terms than he otherwise would have done, or has paid a commission to another broker. Having promised the broker a commission, the principal ordinarily should know that the appearance of a customer may have been caused by the broker, and to avoid liability for payment he should make inquiries of the broker. *On the other hand, the principal has no duty to pay him a commission if the broker has given the principal reason to believe that he has not caused the customer to appear, as where he has been inactive.* If care upon the part of the principal would not have revealed the connection between the broker and the customer, and the principal makes a lower price because of his belief that he would not have to pay commissions, the broker's compensation is reduced to the extent that the price has been thereby lowered, as where the customer acts through a straw man who purports to be buying on his own account. . . ." (Emphasis ours.)

It thus appears that where the conduct of the broker has been such as to warrant the principal in assuming that the purchaser has not been procured by

the broker's efforts, the principal will not be liable for commission on a sale at a reduced price even though the broker was, in fact, responsible for interesting the purchaser in the property. In this connection the contract of the broker with the principal, as well as prior negotiations under the agreement, may play an important part. Indeed, since the relationship arises from contract, the terms of the agreement are always a factor to be considered. First Trust Joint Stock Land Bank of Chicago, Ill., v. Ferguson, 187 Okla. 48, 104 P. 2d 427; Williams v. Seminole Oil & Gas Co., 171 Okla. 406, 43 P. 2d 59.

In this case the contract of the parties and their conduct pursuant thereto is reflected by written communications (letters and telegrams) between them. It was conducted between the plaintiff, a resident of Oklahoma, and the officers of the company residing in Pennsylvania. The properties involved (oil and gas leases) are situated in Oklahoma.

The correspondence is rather voluminous. A brief analysis of the pertinent portions of the substance will satisfy the requirements of this opinion.

On December 11, 1936, the plaintiff initiated the contractual arrangement by a letter to the defendant advising that he had a prospective purchaser for the properties of the defendant and inquiring if the same were for sale. He advised he would expect a 5 per cent commission "if and when the deal is completed."

In their reply on January 13, 1937, the company declined to sell the properties, but suggested a sale of the capital stock of the company.

On Apirl 17, 1937, the plaintiff again advised of the existence of a prospective purchaser, this time at a price of $150,000 for either the properties or the stock.

The company's reply was noncommittal pending decision by its board of directors.

Further correspondence resulted in a commitment by the company to sell at a price of $150,000 pursuant to a proposed 30-day option. After further correspondence this proposed deal fell through and the company was so advised by letter of July 31, 1937. In the same letter Jarvis said he had another tentative purchaser. Subsequently, correspondence was conducted with reference to the second or subsequent prospect, but terms, mutually satisfactory, could not be arranged and this deal also fell through.

In the course of the correspondence in connection therewith the question of credit arose. The broker then revealed the identity of his prospect, which was the "Associated Oil and Gas Company of Tulsa."

This company abandoned the idea of purchasing the property at that time, and Jarvis so advised the defendant by letter on November 27, 1937.

A careful review of this correspondence discloses that the broker did not solicit or procure what may be termed a "general listing" of the property, that is, an authority to search for prospective purchasers of the property. Nor did he purport to be "exerting himself" in that direction. On the contrary, it appears that as far as his correspondence with the defendant reflected, he contacted successively two persons (possibly three) who were interested in the purchase of the property, and, having first contacted such persons, he then instituted communications with the defendant with a view to consummating a sale.

When he advised the defendant that the second prospective purchaser would not then consummate the deal, he did not intimate any intention to seek other purchasers nor seek any express authority to do so.

Neither of the persons whom he suggested to the defendant might purchase the property purchased the same. He did not advise the defendant of any subsequent solicitations. Nor did he subsequently suggest that he had any other purchasers until June 17, 1938, when he sent a telegram reading:

"Mr. E. C. Ake,
"3007 North Second St.,
"Harrisburg, Penn.

"Have party interested in your property at $150,000. Are you yet interested? Please wire answer at once.

"Emmett Jarvis."

Jarvis was immediately informed by wire that the property had been sold. The dispute about the commission then developed.

The property was purchased by the Whitehill Oil Corporation and subsequently conveyed to it by assignment bearing date of August 8, 1938. The consideration was $67,000; payable partly in cash, partly in deferred payments, and partly from the proceeds of oil to be produced.

Jarvis claimed and established at the trial that in January, 1938, through one Devine, he had solicited the Whitehill Oil Corporation as a possible prospective purchaser of the property and had furnished to that company information concerning the same.

However, there is other proof in the record of an uncontradicted character that the purchasing company had been interested in the possible acquisition of the property for several years and had negotiated with the company in contemplation of such a purchase long before the plaintiff, Jarvis, ever interested himself in its sale. These features of the evidence bear most directly upon the question of whether the plaintiff procured the purchaser, an issue which upon other considerations need not be discussed in this appeal.

Jarvis did not notify the defendant company of his solicitation of the Whitehill Oil Corporation in January or at any subsequent time prior to the sale, and the defendant company had no knowledge thereof.

According to the correspondence of Jarvis himself, he did not regard himself as having the property listed with him for sale at a definite price. Nor did he regard himself as exercising un-

der the contract with the property owner authority to conduct a search for purchasers. Notice his telegram of June 17th, quoted supra. He merely advised that he knew of another prospective purchaser and inquired as to whether the company was still disposed to sell at the price designated, $150,000.

We are thus dealing with the claim of a broker for commissions on a sale of property at a reduced price by his principal to a purchaser who had been contacted by the broker, but which contact and solicitation by the broker was unknown to the principal. The principal had made no inquiry of the broker to ascertain whether such a contact had been made by the broker. The general rule in this jurisdiction being that the principal is bound to make such an inquiry for his own protection unless the conduct of or contract with the broker is such as to excuse such an inquiry. The question then is whether the inquiry was excused. Factors bearing directly on the question are:

The agency was not exclusive and the principal retained the authority to sell on his own initiative.

The contract with the broker was not a general listing, but in many respects a loose arrangement under which, from time to time, when the broker contacted a prospective purchaser, he advised his principal.

Prior to the sale no communication of the broker related to the Whitehill Oil Corporation. That is, the Whitehill Oil Corporation, to whom the sale was finally made, was not a disclosed or undisclosed purchaser about whom the broker had contacted his principal in accord with his usual practice.

We are of the opinion, and hold, that the broker's contract and conduct was such as to excuse the principal from inquiry of the broker before a sale to the Whitehill Oil Corporation, and that the only hazard the principal assumed with reference to liability for commission in making such sale was upon the contingency that the purchaser was an undisclosed prospect about which the

broker had written the principal. The Whitehill Oil Corporation was not such a prospect.

Disputed questions of fact not material to the decisive issue have not been reviewed in this opinion as such. Other questions presented by the defendant need not be discussed by reason of the controlling effect of the question discussed.

It is apparent from the record that the evidence on the decisive point was complete, and since a new trial could not lead to any other result, the judgment of the trial court is reversed, with directions to enter judgment for the defendant.

WELCH, C. J., and CORN, V. C. J., and OSBORN, BAYLESS, HURST, and ARNOLD, JJ., concur. RILEY, J., concurs in conclusion specially. GIBSON, J., absent.

---

RILEY, J. (specially concurring). This is a cause on contract for recovery of a broker's commission as against a corporation. The alleged authority of the secretary-treasurer of the corporation to contract for the corporation is denied under oath. As a rule the burden of proof rests on the plaintiff to establish a contract providing him a broker's' commission. It is the general rule that a mere secretary-treasurer of a corporation is not an executive officer and has no authority to contract for a corporation. Measuring the alleged specific authorization sought to be established by written communications between plaintiff and the ministerial corporate officers, I conclude that no substantial specific authority was vested so as to bind the corporation.

Upon the issue of ratification of the contract, I find no evidence within the record to show that the corporation knew of the transaction between its secretary-treasurer and the plaintiff, and therefore, the mere act of the subsequent sale of the property by the corporation is not sufficient to establish ratification.