DOBSON, Appellant, v. WOLFF et al., Respondents

(54 N. W.2d 469)

(File No. 9294. Opinion filed July 30, 1952)

Rehearing denied November 14, 1952

**John Carl Mundt,** Sioux Falls, for Appellant.

**Blaine Simons,** Sioux Falls, for Respondents Alice H. Wolff, J. J. Houske and Frank Olson.

**Gene Pruitt,** Sioux Falls, for Respondent Eugene E. Swancutt.

ROBERTS, J. This is an action brought by Lela M. Dobson to recover from defendants a commission for the sale of a farm. At the conclusion of plaintiff's evidence defendants moved for a directed verdict on the ground that the evidence was not sufficient to entitle plaintiff to recover and this motion was granted. From judgment entered pursuant to the directed verdict, plaintiff has appealed.

The controversy arose out of an oral arrangement between plaintiff who conducted a real estate agency in Sioux Falls and Alice H. Wolff, defendant owner of a farm in Turner county. Plaintiff was told that she could try to find a purchaser. The listing was not exclusive. John Joffers, the son-in-law of Arie Breed, called upon plaintiff at her residence in the fall of 1949 and discussed with her the purchase by his father-in-law of a farm. Plaintiff showed

him this farm and others. He was interested in the Wolff farm, but "wanted to look around a little while longer." In June, 1950, Joffers again inspected this and other farms which plaintiff had listed for sale. Plaintiff testified that Joffers said that he "wanted to look around for something a little cheaper" and asked her "to keep looking" for such a farm. Plaintiff testified that during the time when defendant Swancutt and she had under consideration an arrangement whereby they would share commissions resulting from the sale of property by them she informed him of the prospective purchaser for the Wolff farm and in August, 1950, in his presence talked with Joffers about the farm. In a later conversation with plaintiff Joffers replying to a sugguestion that he again look at the farm said "I'll come back and we'll walk over the farm and then we can go and see my father-in-law". Plaintiff testified that she had a conversation sometime in July, 1950, with Miss Wolff and then revealed to her the name of the prospective purchaser. Miss Wolff denied that she had been informed that plaintiff was attempting to interest Joffers and his father-in-law in purchasing the farm. The real estate agents J. J. Houske and Frank Olson then appeared on the scene. Defendants Houske and Swancutt contacted Miss Wolff and Houske obtained the listing from her of three farms including the one in question. Houske as an adverse witness testified that Joffers came to him and inquired about this farm that he had described in an advertisement. The farm was sold to Arie Breed and on October 9, 1950, and following the execution of a contract of sale, defendant owner paid to the other defendants $240 as part of their commission.

A broker effecting a sale of property can recover a commission only by virtue of a contract, express or implied, with the principal. A broker employed to find a purchaser earns his commission and becomes entitled thereto when he produces a purchaser able, ready and willing to purchase at a price and on terms and conditions which have been specified by the principal or are satisfactory to him. Ericson v. Ebsen, 52 S. D. 97, 216 N.W. 860, and cases cited. It is essential to the right of recovery that the broker was the procuring cause of the sale consummated by the prin-

cipal with a purchaser produced by the broker. If he does not have the exclusive sale of the property, he does not become entitled to a commission merely by showing the property involved to the person who eventually purchases it. This does not mean as stated in Langford v. Issenhuth, 28 S. D. 451, 134 N.W. 889, that a personal introduction of purchaser to the principal is essential. It is sufficient if through the efforts of the broker the parties are brought into communication with each other.

 Viewing the evidence in its aspect most favorable to plaintiff, as we must in passing upon a motion to direct a verdict, we think that there was insufficient evidence to take the case to the jury. At no time before completion of the sale did plaintiff procure the consent of Joffers or his father-in-law to purchase the farm nor do we find anything from which it may be inferred that the owner wrongfully or otherwise prevented plaintiff from making the sale. It was understood between plaintiff and Joffers at their last conference before the sale of the porperty that they would walk over the farm and would then contact the father-in-law with whom plaintiff at no time had discussed purchase of the property. The point on which plaintiff seems to rely is that because the contract of employment was merely to find a purchaser able, ready and willing to enter into a contract with the owner on terms prescribed by her, she is entitled to compensation though defendant owner completed the transaction. It may be conceded that if plaintiff were the procuring cause of the sale the fact that the owner herself completed the sale would not release her from liability to plaintiff for a commission. The sale, however, to the person with whom a broker has negotiated will not entitle him to a commission under such a contract unless he was the procuring cause thereof.

Plaintiff cannot base any right in this action on the mere fact that her efforts may have contributed to the negotiations resulting in the sale. If this were the rule, says the court in Carney v. John Hancock Oil Co., 187 Minn. 293, 296, 245 N.W. 367, 369, "no owner desiring to sell could safely employ more than one broker, for in the event of each of several being able to convince a jury that he had contributed

anything to a sale, the principal might be held for as many commissions as there were brokers employed. The law contemplates no such absurdity."

To the same effect is Vreeland v. Vetterlein, 33 N.J.L., 247, in which it is said:

"Where the property is openly put in the hands of more than one broker, each of such agents is aware that he is subject to the arts and chances of competition. If he finds a person who is likely to buy, and quits him without having effected a sale, he is aware that he runs the risk of such person falling under the influence of his competitor—and in such case, he may lose his labor. This is a part of the inevitable risk of the business he has undertaken. On the other hand, if fortune should be propitious, a bidder for the property on sale, who has been solicited by his rival, may come to him, and by his means effect the bargain. Now, in this competition, the vendor of the property is to remain neutral; he is interested only in the result. But when either of the agents thus employed brings a purchaser to him, and a bargain is struck at the required price, on what ground can he refuse to complete the bargain? Can he say to the successful competitor, this purchaser was first approached by your rival, and you should have refused to treat him on the subject? There is no legal principle upon which such a position could rest."

The determinative fact is that plaintiff did not produce to the owner a purchaser even though her efforts may have contributed to bringing about the sale. It follows that the court properly directed a verdict for defendants.

The judgment appealed from is affirmed.
All the Judges concur.