MEHLBERG, Respondent v. REDLIN, et al., Appellants

(96  N.W.2d  399)

(File  No. 9725.  Opinion  filed  May  12,  1959.)

Rehearing  denied  June  8,  1959.

**Hendrickson & Lobitz,** Watertown, for Defendants-Appellants.

**Gribbin & Burns,** Watertown, for Plaintiff-Respondent.

SMITH, J.   This action was brought by plaintiff to recover judgment against defendants for a broker's commission for services rendered at the specific request of defendants in the sale of a Watertown residential property. A general denial was interposed by defendants. The jury returned a verdict for plaintiff as prayed in her complaint. The defendants have appealed and, predicated upon grounds stated in their motions for a directed verdict, and for judgment n. o. v., assert that the evidence is insufficient to support the verdict in several particulars.

In the spring of 1957 the defendants were engaged in building homes at Watertown, South Dakota, for sale. In late April defendant Redlin called at plaintiff's real estate office in Watertown and offered to list two of their new properties for sale. According to Redlin's version of their negotiations, the property of present concern was listed at $15,500 net to defendants; all to be received above that amount to constitute plaintiff's commission.   According to plaintiff, she having refused to serve defendants on the basis suggested, Redlin finally agreed that she would be allowed a commission at that price of 5% on the first $5,000 and 2½% on the remainder, and told her to go ahead and sell it. It was understood that defendants reserved the right to sell the property if they found a purchaser.

A synod of the Evangelical Lutheran Church had an established church in Watertown. A Rev. Schumann was pastor of that church. A second church was in process of organization in the spring of 1957. A plan was afoot to build a parsonage for the new pastor and an apartment had been

rented for his use until a new home could be erected. Actual construction of the new dwelling had not commenced. On Friday, April 26th of that year Rev. Kell arrived to take over the new pastorate. On the same day his furniture arrived in a van. It was determined that the rented apartment was wholly inadequate and Rev. Schumann undertook to assist in finding suitable quarters for rent. He called plaintiff for a list of rental properties. She gave him the addresses of two properties she had for rent, and in addition she told him of the two new properties of defendants she had for sale. During the afternoon of that day Schumann, Kell and an officer of the synod viewed defendants' property from the outside. Thereafter they went to the office of defendant Redlin at his lumberyard. They inquired as to whether he would rent the dwelling and received a negative answer. When asked if he said anything to them about selling the house he replied, "Yes, I made them an offer. The committee knew already what I wanted, it was $15,500." He accompanied them to and into the property. While they were in the house Rev. Schumann mentioned to Redlin that they had received the listing from plaintiff. Schumann testified, "He did not reply. Mr. Redlin is hard of hearing and I would not be willing to say that he heard me." Redlin was then wearing a hearing aid. When inquiry was made as to whether Schumann had told him they had received the listing from plaintiff, he first replied, "I don't remember that. There was a lot of fellows talking, everyone was excited because the load was loaded and he wanted to move in an hour, the sun was pretty near down." Thereafter he testified, "There was nothing said, no" * * * . "No. I didn't know nothing about it."

Within a brief time the committee returned to Mr. Redlin's office and told him they would buy the property. He suggested the formal contract could await until to the first of the next week. Rev. Kell moved in that evening. The contract to purchase for $15,500 was executed at a local bank on the following Tuesday.

About a week or ten days after the sale was made Redlin called at plaintiff's office and told her she need not sell the property as it was sold. Upon inquiry he informed

her that it had been sold to the church. She then asked for her commission, and he answered she "didn't do anything toward the sale." This litigation resulted.

■ It is elementary that in reviewing the refusal of the trial court to direct a verdict for a defendant, this court must view the evidence in the light most favorable to plaintiff and accord plaintiff the benefit of all reasonable inferences which may be drawn therefrom. Schuknecht v. Chicago, M., St. P. & P. R. Co., 74 S.D. 61, 48 N.W.2d 917.

The principal contention made by the defendants is that the evidence is insufficient to support a finding by triers of the fact that the plaintiff was the "procuring cause" of the sale consummated by Redlin.

■ In the absence of a special contract, to earn a commission a broker must be the "procuring cause" of a sale consummated by his principal. 8 Am. Jur., Brokers, § 172, p. 1087. This universally accepted principle was recently reiterated by this court in Dobson v. Wolff, 74 S.D. 493, 54 N.W.2d 469.

■ A number of the cases digested in 34 Words & Phrases, phrase the definition of "procuring cause" substantially in terms as one originating a series of events which, without break in their continuity, result in the accomplishment of the prime object of the broker's employment.

The Restatement employs the phrase "effective cause" and states, "An agent is an 'effective cause,' as that phrase is used in this Section, when his efforts have been sufficiently important in achieving a result for the accomplishment of which the principal has promised to pay him, so that it is just that the principal should pay the promised compensation to him." Restatement of Agency 2d, § 448, Comment a.

■ In an attempt to demonstrate that the limited activities of plaintiff in calling the attention of the representatives of the purchaser to defendants' property could not reasonably be said to have been the procuring cause of the sale to the synod, defendants urge upon us a group of cases, of which our case of Dobson v. Wolff, supra, and that of

Carney v. John Hancock Oil Co., 187 Minn. 293, 245 N.W. 367, are typical, wherein the courts concluded that a broker who had either introduced a purchaser to the property or to the principal had failed to establish that he was the procuring cause of the sale in question. These cases are clearly distinguishable from the case at bar. In each respective case it was evidence of that which intervened the initiation of negotiations by the broker and the consummation of a sale by his principal, such as a breaking off of negotiations or the activities of competing brokers, which impelled a decision that the plaintiff broker had failed to establish a cause of action. These and many other cases we have studied but serve to emphasize the truth of the much repeated statement that each of these cases is dependent upon its own particular facts. So we turn to a consideration of the inferences which triers of the fact might reasonably draw from the facts peculiar to this case.

As background of the events of Friday, April 26, 1957, it should be noted that theretofore plaintiff had devoted time, effort and expense in establishing a market place to which both vendors and purchasers of real property would be induced to resort. It was this preliminary activity of plaintiff which brought both Redlin and Rev. Schumann to that office. These facts suggest that to conclude plaintiff's only contribution toward bringing Redlin and the synod together was the answering of a single telephone call is to ignore an important part of her activities. The direct contribution made by plaintiff to the consummation of the sale to the synod was to lodge in the mind of Rev. Schumann, who made inquiry for rental property for immediate occupancy, that she had defendants' newly constructed cottage for sale. Under other circumstances than those which then prevailed the suggestion that she had suitable property for sale in addition to two properties for rent might have produced no reaction. Because of the peculiar circumstances actually existing, it could reasonably be inferred that it produced an explosive reaction. The church had decided to build a parsonage. A lumberyard other than that of Redlin was then preparing an estimate of the lumber for such a parsonage. The minister who had come to serve the church

was, so to speak, standing in the street with his goods and furnishings seeking shelter. Through plaintiff's offer, Schumann, Kell and an officer of the synod were induced to go to defendants' cottage and look at it through its windows. From there they went to Redlin and inquired whether he would consider renting the cottage. He made a negative answer. They returned to examine the interior of the property with Redlin. It was apparent that this property would serve both the immediate and permanent needs of the church. For aught that appears in the record, because it answered all of the needs of the church, the property sold itself. Thus within a matter of hours after plaintiff opened the negotiations, an oral agreement to buy the property was made, and Kell was in occupancy.

Although plaintiff did no more than to initiate the negotiations which were consummated by defendants, because of the potency which her suggestions gained from the existing peculiar circumstances we have outlined, we are persuaded that reasonable minds, acting reasonably, (cf. Jerke v. Delmont State Bank, 54 S. D. 446, 223 N.W. 585, 72 A.L.R. 7 and Federal Land Bank of Omaha v. Houck, 68 S.D. 449, 4 N.W.2d 213) could conclude that her mere introduction of the synod to defendants' property was the procuring or efficient cause of its sale.

We concur in the view expressed in Mechem, Agency, 2d Ed., § 2435, p. 2011, in these words: "His efforts, it is said, may have been slight, but if they brought about the desired result, no more could be asked; * * *."

The foregoing view gains support from Langford v. Issenhuth, 28 S.D. 451, 134 N.W. 889 and Dobson v. Wolff, supra. In those decisions it was declared that a personal introduction of purchaser to the principal is not essential, if through the efforts of the broker the parties are brought together.

Elsewhere it is written, "If a person employs only one broker to procure a customer, the broker is ordinarily entitled to his commission, under the rule stated in this Section, if he causes a customer to negotiate with the principal and the customer makes a purchase without a substantial break

in the ensuing negotiations. It is not necessary that the broker conduct the negotiation or even be an influential factor in persuading the customer to accept the terms; nor is it necessary that the broker should personally introduce the customer or bring the principal to his attention; he introduces the customer if, through any means which he uses to attract attention, the purchaser is led to the principal." Restatement of Agency, 2d, § 448, Comment d.

The remaining points made in defendants' motions to direct and which they present here deal with matters upon which the evidence was in conflict and which a jury would be entitled to resolve against defendants. As indicated the jury believed plaintiff's evidence. Nevertheless, we elect to briefly consider these contentions.

■ They first assert that: Plaintiff failed to establish that the minds of the parties met on the terms of a listing contract. The record is clear that although Redlin testified he only offered to list the property at $15,500 net to defendants and allow her all she could get above that figure as her commission, plaintiff testified she refused to serve them on that basis, and thereupon, after she explained the percentage of the vendor's price she would charge as commission, Redlin told her to go ahead and sell the property and "I would receive commission out of that." This evidence presented a jury question. Jerke v. Delmont State Bank, supra.

■ As a second proposition, they assert: Plaintiff failed to notify defendants of her connection with the purchasers. Although plaintiff did fail to inform defendants that she had quoted their property to Schumann, it will be recalled Schumann testified that before the sale and while they were inside this little cottage he mentioned to Redlin that they had received the listing from plaintiff. While Redlin first testified he did not remember that, and then denied anything was said, and Schumann testified he would not say Redlin heard him because he is hard of hearing and made no reply, the trial court was privileged to listen to the testimony of both Schumann and Redlin. The court not only had an opportunity to hear the quality of Rev. Schumann's voice but to judge the extent of the impairment of Mr. Redlin's hearing.

The court also was aware of the fact that Rev. Schumann was somewhat embarrassed by the fact that both Redlin and plaintiff were members of his church. In our opinion, the court was warranted in concluding that, whether Schumann did mention plaintiff's connection to Redlin as he testified, and whether Redlin heard what he said, were matters for a jury to decide.

For a different and more impelling reason this second point of defendants is unavailing. The contract of plaintiff must be interpreted as requiring her to produce a purchaser ready, able and willing to buy for $15,500. Lichty v. Daggett, 23 S.D. 380, 121 N.W. 862. The defendant Redlin took over and sold to the customer with whom plaintiff had opened negotiations, at the price at which the property was listed with plaintiff. Thus, even if it be assumed that Redlin failed to hear the statement made to him by Rev. Schumann, the very object of the listing was accomplished, and defendants were placed at no disadvantage by reason of a lack of notice. In that circumstance, if the broker is the procuring cause of the sale, he is entitled to his commission. In Rounds v. Allee, 116 Iowa 345, 89 N.W. 1098, Justice Ladd wrote:

> "The fact that defendant did not know Grave-sen had been sent to him by plaintiff is not controlling. It was no part of the contract. All he was to do was to find a purchaser who was ready, able, and willing to buy, or would in fact buy; and if he did this the contract was fulfilled, regardless of defendant's information of what he had done."

Such is the weight of authority. Annotation to Lasoya Oil Co. v. Jarvis, 191 Okl. 213, 127 P.2d 142, 142 A.L.R. 270, at page 277.

For all of the foregoing reasons we conclude the trial court did not err in refusing to direct a verdict for defendants.

The judgment of the trial court is affirmed.

HANSON, P.J., and ROBERTS and RENTTO, JJ., concur.