William M. RICHARDSON, Appellant,

v.

**KELLEY LAND AND CATTLE COMPA-
NY, a corporation, Appellee.**

No. 74–1162.

United States Court of Appeals,
Eighth Circuit.

Submitted May 17, 1974.

Decided Oct. 21, 1974.

Paul X Williams, J., filed a dissent-
ing opinion.

Newell E. Krause, Mobridge, S. D.,
for appellant.

Terence A. O'Keefe, Aberdeen, S. D.,
for appellee.

Before GIBSON, Chief Judge, WEB-
STER, Circuit Judge and WILLIAMS,
District Judge*.

WEBSTER, Circuit Judge.

This is an appeal from the dismissal
of an action to collect a real estate bro-
ker's commission. We affirm. The fol-
lowing facts, as related in appellant's
brief, support our holding:

On May 13, 1971, William M. Richard-
son and Kelley Land and Cattle Co. en-
tered into an exclusive listing contract
in St. Paul, Minnesota. The listing con-
tract entitled Richardson to a real estate
broker's commission provided he pro-
duced before May 1, 1972 a purchaser
for the Katy Hereford Ranch, located in
Brown and McPherson Counties in
South Dakota. The listing contract
specified that the purchaser pay
$400,000 cash and that the date of pos-
session of the ranch was "to be agreed
upon."

* The Honorable Paul X Williams, United States District Judge, Western District of Arkansas,
sitting by designation.

In June, 1971, Richardson learned that Derald and Karen Holt were interested in buying the ranch. On April 24, 1972, Derald Holt submitted a "uniform purchase agreement," whereby he deposited $10,000 with Richardson and promised to pay to Kelley the remainder of the purchase price by December 1, 1972; the possession date named in this offer was May 5, 1972.[1] Following Kelley's rejection of this offer, Richardson arranged a meeting between Holt and James Kelley (President and Treasurer of defendant corporation), to be held in Aberdeen, South Dakota, on April 30, 1972, the last day on which Richardson could perform under the listing contract. No contract of sale was executed at that meeting; however, soon after Kelley had left to return to St. Paul, Holt decided that he could agree to a deferred possession date of December 1, 1972, a term upon which Kelley had insisted at the meeting. Richardson drafted a letter to this effect, which he mailed to Kelley on the same day. Subsequently, Richardson drew up a "uniform purchase agreement" incorporating the December 1, 1972 possession date specified in the letter and designating a closing date of June 1, 1972. The "uniform purchase agreement" further stated that $10,000 had been deposited with Richardson, that $30,000 would be payable on June 1, 1972, and that the final balance of $360,000 would be payable December 1, 1972. Kelley refused to accept this offer, contending it was "not a cash offer," and this lawsuit followed.[2]

Following a trial to the court, Judge Axel Beck dismissed the action on the ground that the offer procured by Richardson, as evidenced by the "uniform purchase agreement" drawn up after the meeting, did not satisfy the "cash sale" terms of the listing contract but instead specified deferred payments. We agree. The authorities cited in appellant's own brief state that a "cash sale" is one wherein *payment* and *delivery* are concurrent. *See* 6 Words and Phrases 444–445 (1966); Huber v. Mullan, 246 F.Supp. 8, 16 (D.Md.1964), aff'd, 350 F.2d 872 (4th Cir. 1965). "Delivery," however, refers not to the date on which possession is transferred, as Richardson implicitly argues, but rather to the closing date or the date on which the deed to the property is transferred. *See* 26 C.J.S. Deeds § 42 at 687 (1956): "[I]n determining whether the grantor intended delivery, the test is not whether the grantor has retained possession or control of the property conveyed, but rather whether he has retained possession or control of the deed."

We cannot accept Richardson's argument that the letter drafted on April 30 is alone determinative of the case. That letter, which referred to a $400,000 bid by the Holts and a possession date of December 1, 1972, expressly provided that a "Purchase Agreement" would be forthcoming. Thus, whatever the significance of this letter,[3] it must be considered in the context of the "uniform purchase agreement" which followed. That document clearly states that payment of $360,000 of the purchase price would be deferred until the possession date, six months after the closing date. Moreover, the evidence of the negotiations contained in the record before us indicates that the Holts never intended to pay the full price in cash concurrent with or prior to the transfer of title.

In order to meet the "cash sale" terms of the exclusive listing contract, the Holts must have offered to tender the full $400,000 on June 1, 1972, the

---

1. The closing date named was also May 5, 1972.

2. Richardson filed this action in state court in South Dakota. Defendant Kelley removed the case to the United States District Court for the District of South Dakota. Federal jurisdiction was based on diversity of citizenship, 28 U.S.C. § 1332.

3. Richardson contends that the letter constituted a binding acceptance of Kelley's offer to sell. It was Kelley's position that the letter, together with the purchase agreement to which it referred, constituted a counteroffer because it changed or qualified the terms of the original offer.

date they had designated to close the purchase.[4] Having failed to produce a purchaser ready, willing and able to comply with those exact terms, Richardson was entitled to no commission. *See* Larson v. Syverson, 84 S.D. 31, 166 N.W.2d 424, 426 (1969); Rossum v. Wick, 74 S.D. 554, 56 N.W.2d 770 (1953).

Affirmed.

PAUL X WILLIAMS, District Judge (dissenting).

I respectfully dissent.

The undisputed facts in this case show that the landowner, by written contract, listed lands for sale with the broker. The listing required that the broker on or before a designated day produce a buyer who was ready, able and willing to buy the land for the price and according to the terms of the listing. In my opinion the undisputed facts show that the broker produced such a buyer within the prescribed time and therefore is entitled to his commission.

It must be borne in mind that the written listing by the landowner did not require the landowner to sell. It obligated him to pay the broker a commission if and when the broker produced a qualified buyer on or before the prescribed date.

The language of the written listing is not in dispute. The fact that a ready, willing and "anxious" buyer was produced by the broker is not in dispute. In my opinion, the "ability" of the buyer to buy for cash was amply demonstrated and nothing in the trial Judge's opinion indicated to the contrary. This is all that the broker was required to do to entitle him to his commission.

The trial court and the majority here hold that because a contract of sale between the landowner and the prospective buyer was not executed within the exclusive listing period and the cash selling price paid within that period the broker did not produce a ready, able and willing buyer and is not entitled to his pay. But the facts are to the contrary. They show that the listing recited a cash selling price with a delivery of possession date "to be agreed upon." No obligation to pay the cash price would arise until a delivery of possession date was agreed upon because either actual delivery of possession or a contractual substitute for such delivery is essential to a sale of land. It is elementary that the buyer has no obligation to pay an agreed cash selling price unless and until the seller agrees to sell.

In this case the landowner, for reasons satisfactory to himself, began to equivocate just as soon as he realized the broker had produced a buyer ready, able and willing to buy. And he had the right to retain his land—certainly he had not obligated himself to sell it.

But the actual contract for the sale of the land is not before the Court. The contract before the Court is the listing contract where the landowner contracted to pay a broker's commission when a ready, able and willing buyer was produced within the prescribed time.

In my opinion the undisputed proof shows that the broker in apt time produced such a buyer and the Court should order the landowner to pay the contracted commission. The workman is worthy of his hire.

4. We reject the argument that "closing date" meant something other than the date for transfer of title. The date of possession is a matter of contract, and may be deferred, but the transfer of title is of the essence of the sale of real property and an agreement to sell is "closed" on the date that sale is consummated by transfer of title.