**KAHLER, INC., Plaintiff and Appellee,**

v.

**Charles W. WEISS, Defendant and Appellant.**

No. 19069.

Supreme Court of South Dakota.

Considered on Briefs Sept. 14, 1995.

Decided Nov. 1, 1995.

Mitchell C. LaFleur of LaFleur, LaFleur & LaFleur, Rapid City, for plaintiff and appellee.

Allen L. Scovel and Mitchell D. Johnson of Dakota Professional Center, Rapid City, for defendant and appellant.

KONENKAMP, Justice.

A realtor sued to collect a commission on the sale of a business. The seller asserted the exclusive listing agreement was unenforceable after its term expired, and alternatively, that the realtor failed to substantially perform. The trial court granted the realtor's motion for summary judgment. We affirm in part, reverse in part and remand.

## FACTS

Charles Weiss owned a catering business. The business was divided into two distinct functions: local catering and fire season catering. Weiss and his wife, Carol, signed an exclusive listing agreement with Kahler, Inc. (Kahler), a realtor, on November 23, 1990 for the sale of the entire catering business. Part of the agreement stated:

EXCLUSIVE LISTING AGREEMENT

\* \* \*

THIS IS A LEGAL AND BINDING CONTRACT.

\* \* \*

In consideration of your (Kahler, Inc.) agreement to use your efforts to find a purchaser, and to cooperate with other brokers, I hereby grant to you for the above term the exclusive irrevocable right and privilege to sell the following property:

\* \* \*

If during the term hereof, the property is sold by you or me or anyone else; or if you, or me, or any other cooperating broker produce a purchaser ready, willing and able to purchase the property; or within 360 days after the expiration of said period a sale is made to any person to whom the property has been shown by you or me or any other cooperating broker, I agree to pay you a commission of 6% plus applicable sales taxes.

Weiss and Kahler amended the listing agreement on January 8, 1991 and February 19, 1991, changing the terms of the sale price but leaving unchanged the expiration date of the original agreement, June 1, 1991. They made another amendment to the agreement on June 3, 1991, extending the expiration date to June 1, 1992 and again changing the purchase price. The amendment stated that "[a]ll other terms and conditions of the original listing contract remain unchanged." The amendment referred to the November 23, 1990 agreement. Weiss's wife did not sign this amendment.

Serious negotiations with Jim Zundel for the sale of the Weiss business started in June 1991. Zundel submitted a purchase offer on June 25, 1991 through Kahler. Weiss declined this proposal. On February 7, 1992, Weiss wrote a letter to Kahler advis-

ing him of his decision to end the agreement on the sale of the local catering portion of the business, but specifying he would continue the listing arrangement for the sale of the fire catering business. Weiss sent another letter to Kahler dated April 22, 1992 terminating Kahler's contractual services on the remainder of the listing agreement. An offer for the sale of the fire catering business, dated March 30, 1992, had already been signed by Zundel, the ultimate purchaser of the fire catering business. Weiss and Zundel signed a re-negotiated sales agreement on July 7, 1992. Zundel made a down payment of $300,000 and took possession of the fire catering business on the same date. As the sales agreement provided for assignment of its Forest Service contracts, it was conditioned upon federal government approval through a novation agreement. Approval was not obtained until August 27, 1993.

Weiss paid no sales commission to Kahler and this action resulted. Summary judgment for Kahler was for the full amount of the commission, $44,520, plus interest, $12,600, for a total judgment of $57,120.

Weiss appeals raising the following issues:

I. Whether the trial court erred in granting Kahler's motion for summary judgment where the amendments to the listing agreement were not signed by Carol Weiss and the original agreement had expired.

II. Whether questions of fact exist on a causal connection between Kahler's efforts to sell the business and the eventual sale of the business.

III. Whether a "sale" occurred within 360 days of the expiration of the listing agreement.

IV. Whether Weiss's termination of Kahler's services cancelled the agreement between the parties.

V. Whether Kahler is estopped to assert his claim for a commission.

VI. Whether questions of fact exist on Kahler's failure to substantially perform under the contract and, as such, whether the contract failed for lack of consideration.

VII. Whether Kahler, Inc. breached its fiduciary duty and whether such breach will bar Kahler's recovery.

We affirm the trial court's decision on Issues I–V and reverse and remand on Issues VI and VII.

## Analysis

Summary judgment will be affirmed when there are no genuine issues of material fact and the legal questions have been correctly decided. *Bego v. Gordon*, 407 N.W.2d 801, 804 (S.D.1987); SDCL 15–6–56(c). The moving party has the burden of showing no genuine issue of material fact exists and that judgment should be granted as a matter of law. *Wilson v. Great Northern Railway Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968).

## I. Validity of Listing Agreement Amendments

■ Though the original listing agreement expired on June 1, 1991, Weiss and Kahler extended it by executing an amendment on June 3, 1991. "A contract in writing may be altered by a contract in writing without a new consideration or by an executed oral agreement, and not otherwise." SDCL 53–8–7. The amendment expressly provided that except for the changes reflected in the amendment, "[a]ll other terms and conditions of the original listing contract [of November 23, 1990] remain unchanged." The relevant change in this amendment was the extension of the expiration date of the original agreement from June 1, 1991 to June 1, 1992. The main purpose of the contract, i.e., the sale of the Weiss business, was not affected by subsequent amendments and thus, the amendment extended the original listing agreement as a matter of law. Also, the conduct of the parties after June 3, 1991 reflects their intention to enter into a valid and enforceable extension to the original listing agreement. Kahler continued to market and negotiate a sale of Weiss's business; Weiss continued to correspond with, telephone, and treat Kahler as his broker. Thus, Weiss's argument that the listing agreement was not extended after it expired on June 1 is without merit.

■ SDCL 36–21A–73 requires that "[e]very listing agreement shall be in writing and

shall contain ... the signatures of all parties...." Weiss's wife, who was a signator on the original agreement and the amendment of January 8, 1991, was not a necessary party to the amendments dated February 19, 1991 and June 3, 1991: she had no ownership in the business. Her signature was superfluous on the original agreement and would have been so on any amendments; therefore, her signature's absence was inconsequential.

## II. Causal Connection Between Realtor's Efforts and Sale

 An exclusive listing agreement may bind the seller to pay a commission even though the purchaser was not obtained by the broker, if the property is sold during the period covered by the agreement. *American Property Services v. Barringer*, 256 N.W.2d 887, 889 (S.D.1977). Weiss urges us to interpret this language to require a causal connection between the broker's efforts and the eventual sale. *Mellos v. Silverman*, 367 So.2d 1369, 1371 (Ala.1979). The specific language of the listing agreement provides:

> If during the term hereof, the property is sold by you or me or anyone else; or if you, or me, or any other cooperating broker produce a purchaser ready, willing and able to purchase the property; or within 360 days after the expiration of said period a sale is made to any person to whom the property has been shown by you or me or any other cooperating broker, I agree to pay you a commission of 6% plus applicable sales taxes.

Under the explicit terms of this contract, the question of who was the procuring cause of the sale is irrelevant.

## III. Sale Within Listing Agreement Term

 Weiss contends the actual sale of his business did not occur until the Forest Service approved the novation between Weiss and Zundel on August 27, 1993. The term sale may be given a narrow or broad meaning depending upon the circumstances and what the parties reasonably intended. *Mattingly v. Bohn*, 84 Ariz. 369, 329 P.2d 1095, 1096 (1958). The listing agreement

expressly states: "The term 'sale' shall be deemed to include any exchange or trade to which I [Weiss] consent." Weiss and Zundel signed a sale agreement on July 7, 1992. Weiss made several promises in this document including his agreement to transfer, upon payment of the down payment, all right, title and interest in said property to Zundel. A down payment for $300,000, of the $700,000 purchase price, was made on the same date.* The balance of the purchase price was to be paid in monthly installments beginning forthwith. These facts clearly show an "exchange or trade" was made between Weiss and Zundel constituting a sale as a matter of law. The trial court was correct in concluding a sale occurred within 360 days of the expiration date of the listing agreement.

## IV. Termination of Realtor's Services As Cancellation

 An exclusive listing agreement is a bilateral contract. *American Property Services*, 256 N.W.2d at 889, n.1. Either party has the power to revoke, but not necessarily the right to do so. In *Berven Co. v. Newman*, 281 N.W.2d 268, 271 (S.D.1979), this Court found that the exercise of the seller's power to revoke, by making an unassisted sale, terminated the broker's authority but did not dissipate the seller's contractual duty to pay the broker's commission. Weiss's unilateral termination of Kahler's services on April 22, 1992 did not automatically dispel his contractual obligation to pay Kahler's commission. Weiss contends Kahler's silence, his cessation of all work on the file, and Kahler's failure to communicate with Weiss, led Weiss to believe Kahler had agreed to mutually cancel the listing agreement. Cancellation requires mutual assent. *Century 21 Associated Realty v. Hoffman*, 503 N.W.2d 861, 865 (S.D.1993). Zundel had already submitted a signed sales agreement to Weiss before Weiss sent the termination letter to Kahler. So even if Kahler's silence can be deemed evidence of assent, failure to communicate this vital fact to Kahler invalidates a

---

* The $300,000 down payment was conditioned upon approval by the federal government but was not put into escrow and was paid directly to Weiss.

knowing assent, which imports a decision based upon adequate knowledge of the facts.

## V. Estoppel To Claiming Commission

■ Equitable estoppel as set forth in *Century 21 Associated Realty*, 503 N.W.2d at 866 requires that

[F]alse representations or concealment of material facts must exist, the party to whom it was made must have been without knowledge of the real facts, the representations or concealment must have been with the intention that it should be acted upon, and the party to whom it was made must have relied thereon to his prejudice or injury. There can be no estoppel if any of these essential elements are lacking, or if any of them have not been proved by clear and convincing evidence. . . .

An essential element of equitable estoppel is fraud. There must be some intended deception in the conduct or declaration of the party to be estopped or such gross negligence on his part as to amount to constructive fraud. . . .

*Id.* (citations omitted). Nothing in the record suggests Kahler committed fraud. He received a letter from Weiss ending his services. After he received the letter, Kahler stopped all advertisements, mailings, telephone contacts, and other dealings with Weiss and Zundel. This is hardly surprising when Weiss effectively fired Kahler. The trial court was correct in determining, as a matter of law, no genuine issue of material fact existed on the claim of equitable estoppel.

## VI. Substantial Performance and Failure of Consideration

■ In *American Property Services*, 256 N.W.2d at 887 this Court affirmed the award of a commission, without analyzing whether substantial performance was required, because the seller did not plead failure of consideration at the trial court level. *Id.* In his dissent Justice Wollman embraced the rationale of *Kruger v. Soreide*, 246 N.W.2d 764, 773 (N.D.1976), which construed an exclusive right-to-sell listing agreement:

The listing agreement provided that the commission would be due whether the property was sold by Bowman Real Estate, another broker, or by the Krugers themselves. This type of provision, however, has not been interpreted to entitle the broker to a commission under all circumstances. Rather, there must be some proof of consideration for the contract by performance of services by the real estate agent. The broker must show substantial performance of the duties imposed on him by the contract, even if he does not produce a buyer to be eligible for a commission. To recover a commission even under an exclusive right-to-sell provision, clear evidence of expenditure of time, effort, or money by the broker must be presented. Where such a showing is absent the listing agreement has the characteristics of a unilateral contract, which is not binding for lack of sufficient consideration.

*Id.* at 893–94 (citations omitted). The *Kruger* court went on to hold that because the record revealed at best the brokers' perfunctory effort to sell the property during the renewal period, they were not entitled to recover a commission for lack of substantial performance under the agreement. *Id.* at 894. Justice Wollman asserted a broker's promise to use "best efforts" or "diligent efforts" to find a purchaser is implied, for if it were not, then the broker could sit idly by and do nothing, or almost nothing, and yet be entitled to a commission derived from the seller's own efforts to secure a purchaser. *Id.* at 894. Here Weiss affirmatively pled failure of consideration, so we adopt the *Kruger* rationale. A broker must perform with best efforts to collect a commission under an exclusive selling agreement. Of course, "[a] written instrument is presumptive evidence of a consideration[,]" (SDCL 53–6–3) and "[t]he burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it." SDCL 53–6–4.

■ Substantial performance is a question of fact. *Northern Farm Supply Inc. v. Sprecher*, 307 N.W.2d 870, 872 (S.D.1981); *Bismarck Realty Co. v. Folden*, 354 N.W.2d 636, 641 (N.D.1984) (whether realtor substantially performed under exclusive listing agreement is question of fact). Among other

things, Weiss contends: (1) Kahler attempted to achieve sales with unqualified buyers; (2) Kahler failed to return telephone calls to Weiss; (3) Kahler attempted to reduce his fee from 6% to 3% after Weiss complained to Kahler regarding the service provided, and (4) Kahler left for a month on vacation during a critical stage of negotiations with Zundel. Viewing the evidence most favorable to the nonmovant, a material issue of fact exists on whether Kahler substantially performed under the exclusive listing agreement. Therefore, summary judgment was improper on this issue.

### VII. Breach of Fiduciary Duty

Kahler relies upon *Garrett v. BankWest Inc.*, 459 N.W.2d 833 (S.D.1990), to support the proposition that a fiduciary duty was not breached and the existence and scope of such duty are questions of law for a court to decide. A real estate agent owes the principal a fiduciary duty to use reasonable care, skill, and diligence and must act honestly and in good faith. *Barta v. Kindschuh*, 246 Neb. 208, 518 N.W.2d 98, 100 (1994). Whether a broker breaches such fiduciary duty to the principal is a question of fact. *Gillmore v. Morelli*, 472 N.W.2d 738, 740 (N.D.1991). For the same factual assertions made by Weiss under Issue VI above, and upon reviewing the evidence most favorable to the nonmoving party, a material issue of fact exists on whether Kahler breached a fiduciary duty owed to Weiss. Therefore, summary judgment was also improper on this issue.

Affirmed in part, reversed in part and remanded.

MILLER, C.J., and SABERS, AMUNDSON and GILBERTSON, JJ., concur.